[No. A044465. First Dist., Div. One. Nov. 9, 1990.]

JOSEPHINE GREENE, Plaintiff and Appellant, v.
STATE FARM FIRE & CASUALTY COMPANY et al., Defendants
and Respondents.

## COUNSEL

Ronald C. Lapekas for Plaintiff and Appellant.

Kincaid, Gianunzio, Caudle & Hubert, Gregory Michael Doyle and Paul Yee for Defendants and Respondents.

## OPINION

**McCARTY, J.***—On August 27, 1987, Judge McCullum signed an order extending the five-year deadline within which cases must be brought to trial, for this case and others, to March 18, 1988. This case was assigned to Judge

* Assigned by the Chairperson of the Judicial Council.

Bartalini for trial on March 14, 1988, and he dismissed the case for failure to bring it to trial within five years. Plaintiff appeals.

*Facts and Procedural History*

The roof of Josephine Greene's house leaked. The named defendants in this lawsuit are Greene's insurance company (State Farm Fire & Casualty Company), an adjustor for the insurance company (Sandra Harris), the contractor (Robert C. Allen Company) whose crew put a tarp on Greene's roof as a temporary repair, allegedly making nail holes in the roof which let in even more water, and Roger Bacon, the employee of the contractor responsible for the temporary repair. The substantive issue raised by the lawsuit is which of the parties to the suit is or are responsible for the damages caused by the leaking roof.

Greene filed her original complaint in Alameda County Superior Court on April 13, 1982. Under Code of Civil Procedure section 583, subdivision (b),[1] she had until April 13, 1987, to bring her action to trial or to suffer a dismissal. (Stats. 1972, ch. 1014, § 1, pp. 1883-1884.) In 1984, during the pendency of this action, section 583 was repealed. (Stats. 1984, ch. 1705, § 4, p. 6176.) A newly enacted part 2, title 8, chapter 1.5, article 3 (§§ 583.310-583.360, hereinafter Article 3) continued the provision of section 583, subdivision (b) for dismissal of an action not brought to trial within five years from the date it is filed. (Stats. 1984, ch. 1705, § 5, p. 6179.) Article 3 governs in the present case. (§ 583.160.)

Greene filed her at-issue memorandum on November 21, 1985. On July 21, 1986, the action was referred to judicial arbitration. After an arbitration hearing on March 20 and 30, 1987, the arbitrator filed his award on April 6, 1987, finding Robert C. Allen Company liable for $820 and awarding costs to the other named defendants. Greene filed her request for a trial de novo under section 1141.20 on April 30, 1987.

Section 1141.17, subdivision (b) provides, "If an action is or remains submitted to [judicial] arbitration . . . more than four years and six months after the plaintiff has filed the action, then the time beginning on the date four years and six months after the plaintiff has filed the action and ending on the date on which a request for a de novo trial is filed under Section 1141.20 shall not be included in computing the five-year period specified in Section 583.310." (See *Jackson* v. *Garmon* (1990) 217 Cal.App.3d 860, 864 [266 Cal.Rptr. 201].)

---

[1] All statutory references hereinafter, unless otherwise noted, are to the Code of Civil Procedure.

Section 1141.17 came into play on October 13, 1986, four years and six months after Greene filed her complaint, while the action remained submitted to judicial arbitration. The period beginning on October 13, 1986, and ending on April 30, 1987, when Greene filed her request for a trial de novo, constitutes 200 days. Section 1141.17 therefore operated to extend Greene's deadline for bringing her case to trial to October 30, 1987, 200 days after the original April 13, 1987, deadline.

A trial setting conference on July 31, 1987, resulted in the setting of a trial date for December 11, 1987, 42 days beyond the extended deadline of October 30, 1987. Greene acknowledges that she "was represented at the trial setting conference by local counsel who did not object to the trial date . . . ."

Section 583.340 provides,

"In computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed:

"(a) The jurisdiction of the court to try the action was suspended.

"(b) Prosecution or trial of the action was stayed or enjoined.

"(c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile."

On August 27, 1987, the Alameda County Superior Court, on its own motion, in the person of the late Judge Donald P. McCullum, adopted general order 3.30, which established a civil jury trial calendar disposition program to which the court assigned 500 cases, including the case now on appeal. General order 3.30 included the following finding and conclusion:

"VI. COMPUTATION OF FIVE YEAR STATUTE:
The Court finds, with regard to cases assigned to the Special Civil Disposition Program, that where the five-year limitation created by C.C.P. § 583.310 expires prior to December 18, 1987, it is impracticable, futile or impossible for these cases to be assigned to trial before said date. Under C.C.P. § 583.340, the Court therefore concludes that the five-year statute in these cases shall effectively be extended until completion of the Special Civil Disposition Program or March 18, 1988, whichever first occurs."

The parties had a settlement conference with Judge Kawaichi on the date set for trial, December 11, 1987, which did not produce a disposition, and then on December 15, 1987, counsel for State Farm and Sandra Harris

served notice on the other parties that trial was reset for March 14, 1988. On March 14 trial was continued one day, to March 15, 1988. On March 15, 1988, defendants filed motions to dismiss on the ground that the case had not been brought to trial within five years. The court, in the person of Judge Richard Bartalini, granted the motions by minute order dated March 22, 1988. A formal order was signed and filed March 28, 1988, and a statement of decision was signed and filed June 27, 1988. A judgment of dismissal was entered November 30, 1988.

### No Authority to Vacate General Order 3.30

Judge Bartalini's statement of decision concludes with a finding of fact which opposes the heretofore quoted finding of general order 3.30. Judge Bartalini says, "Plaintiff's failure to bring this matter to trial within the statutory period is not the result of impossibility, impracticability or futility not the fault of Plaintiff." Thus, in effect, Judge Bartalini vacated general order 3.30 and its finding of fact and substituted his own order of dismissal and contrary finding of fact, giving rise to the judgment from which Greene appeals.

The power of one judge to vacate an order duly made by another judge is limited. In *Fallon* v. *Superior Court* (1939) 33 Cal.App.2d 48, 52 [90 P.2d 858], we issued a writ of prohibition restraining a successor law and motion judge from vacating an order of his predecessor, stating, "Except in the manner prescribed by statute a superior court may not set aside an order regularly made." In *Sheldon* v. *Superior Court* (1941) 42 Cal.App.2d 406, 408 [108 P.2d 945], the Court of Appeal, Second Appellate District, annulled the order of one probate judge which vacated the previously made order of another probate judge appointing an administrator, stating "that a valid order made *ex parte* may be vacated only after a showing of cause for the making of the latter order, that is, that in the making of the original order there was (1) inadvertence, (2) mistake, or (3) fraud." Even more on point, in *Wyoming Pacific Oil Co.* v. *Preston* (1958) 50 Cal.2d 736, 739 [329 P.2d 489] the California Supreme Court reversed the order of a second judge dismissing an action under former section 581a for failure to make service of process within three years, after a first judge had found as a fact that the affected defendant was concealing himself to avoid service of process,[2] quoting *Sheldon*. (Accord, *Estate of Hoffman* (1963) 213 Cal.App.2d 635, 641-642 [29 Cal.Rptr. 60], including fns. 2-3, citing former § 937.)

---

[2] Former section 581a provided in part that "no dismissal shall be had under this section as to any defendant because of the failure to serve summons on him . . . while he has secreted himself within the State to prevent the service of summons on him." (Stats. 1955, ch. 1452, § 5, p. 2641.)

In the present case, defendants were, in effect, asking Judge Bartalini to focus on the particular facts of the case and, in light of those facts, to rethink Judge McCullum's order and to see whether he agreed with it. No statutory authority exists for such a request, and Judge Bartalini erred in granting it. (*Farrar* v. *McCormick* (1972) 25 Cal.App.3d 701, 705-706 [102 Cal.Rptr. 190]; *Dunas* v. *Superior Court* (1970) 9 Cal.App.3d 236, 240 [87 Cal.Rptr. 719].) General order 3.30 could "not be set aside simply because 'the court concludes differently than it has upon its first decision.'" (*Wyoming Pacific Oil Co.* v. *Preston, supra*, 50 Cal.2d at p. 739, quoting *Klokke Inv. Co.* v. *Superior Court* (1919) 39 Cal.App. 717, 720 [179 P. 728].) Judge Bartalini's action was particularly inappropriate in light of the fact that the order with which he tampered was not an *ex parte* order, like those involved in *Sheldon* and in *Wyoming Pacific Oil Co.*, but was issued only after notice to the affected parties and two hearings.

General order 3.30 was served on defendants' attorneys on July 31, 1987, in the form of a proposed order, together with notice of an August 7, 1987, hearing on the proposed order. One topic of discussion at that hearing was the need for an addendum to the proposed general order, to deal with the problem of cases assigned to the civil jury trial calendar disposition program which had trial dates which fell more than five years after their original filing dates. The court agreed that an addendum would be appropriate and announced the intention of conducting a noticed hearing on such an addendum on August 21, 1987. Written notice of that hearing, which included the text of the above quoted numbered paragraph VI of general order 3.30 was signed on August 11, 1987. Greene claims that this written notice was served on defendants' attorneys, and that they chose not to attend the hearing on August 21, 1987. Defendants do not contest this claim. Greene also points out that defendants were silent about their objections to general order 3.30 at the time of the original trial date on December 11, 1987, and at the time trial was reset for March 14, 1988.

In light of the above outlined history of noticed hearings and defendants' silence on December 11, 1987, it is unlikely that defendants could have made a showing that they were entitled to relief under section 473,[3] the one statutory provision on which they might have tried to rely in seeking relief from general order 3.30. (See *Dunas* v. *Superior Court, supra*, 9 Cal.App.3d at pp. 239-240.) In any event, by March 15, 1988, when defendants finally did take action, the six-month time limit for section 473 relief had passed. "Application for such relief must . . . be made within a reasonable time, in no case exceeding six months." (§ 473.)

---

[3] Section 473 provides for relief from an order taken against a party "through his or her mistake, inadvertence, surprise, or excusable neglect."

Because Judge Bartalini's action effectively vacated general order 3.30, in the absence of authority to do so, the judgment of dismissal is reversed.

### Equitable Estoppel

 "[T]he equitable doctrine of estoppel applies fully to motions" to dismiss on account of failure to bring an action to trial within five years of its filing. (*Borglund* v. *Bombardier, Ltd.* (1981) 121 Cal.App.3d 276, 281 [175 Cal.Rptr. 150]; accord, § 583.140.) "The doctrine of equitable estoppel is founded on concepts of equity and fair dealing. It provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment. The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." (*Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720, 725 [125 Cal.Rptr. 896, 543 P.2d 264]; accord *Lentz* v. *McMahon* (1989) 49 Cal.3d 393, 399 [261 Cal.Rptr. 310, 777 P.2d 83].)

 "[E]stoppel may be asserted against the government 'where justice and right require it.'" (*Lentz* v. *McMahon, supra,* 49 Cal.3d at p. 399, quoting *City of Los Angeles* v. *Cohn* (1894) 101 Cal. 373, 377 [35 P. 1002]; accord, *Strong* v. *County of Santa Cruz, supra,* 15 Cal.3d at p. 725.) Nor is the executive branch of government the only one of the three branches which may find its interest in conflict with the interest of a litigant, such that it might be estopped from pursuing that interest to the detriment of that litigant. In the present case, the trial court had an interest in expeditiously clearing its calendar of old cases. Greene had an interest in having a full trial on the merits. These conflicting interests set up a situation in which equitable estoppel might be applied against the judicial branch of government.

The hearings which led to the promulgation of general order 3.30 demonstrate that the trial court was apprised of the fact that there were cases assigned to the civil jury trial calendar disposition program which would have trial dates beyond the five-year period set by Article 3. General order 3.30 sent a clear message to the plaintiffs and defendants in such cases. After due consideration, the court determined that its goal of expeditious disposition of these cases would best be served by a blanket extension which would accommodate some trial dates beyond the five-year deadline, rather

than by an individual review of the facts and circumstances of each of these cases, in the context of motions to advance or to dismiss.

The parties to the present case seemed to get the message. During the period of over two months between the adoption of general order 3.30 and the extended deadline of October 30, 1987, Greene made no motion to advance her case for trial. During the four and one-half months between October 30, 1987, and the March 1988 trial date, defendants made no motion to dismiss the case. General order 3.30 gave every indication that the court was not interested in entertaining such motions, and that they would be summarily denied.

Greene's attorney, Ronald C. Lapekas, filed a declaration in opposition to defendants' motions to dismiss in which he explains the reasons why Greene made no objection to the December 11, 1987, trial date and why Greene made no motion to advance that date. Lapekas's office address was in Pasadena, California. He did not make the trip to Oakland to attend the trial setting conference on July 31, 1987. He asked Attorney Joseph Arriola to attend in his stead. As of April 30, 1987, when Greene filed her request for a trial de novo, Lapekas had already calculated the extended five-year deadline for bringing the case to trial as falling on October 30, 1987. However, Lapekas acknowledged, "I did not inform Mr. Arriola of the 5-year date so he was completely unfamiliar with it. I also did not send Mr. Arriola any materials from the file from which he might have determined the date." When Lapekas received notice of the hearing on the proposal to add numbered paragraph VI to general order 3.30, he "saw this case was one of those included and deleted it from my 5-year calendar . . . . I did not concern myself with the 5-year statute applicable to this case . . . ."

Defendants contend that Judge Bartalini found as a fact that the failure of Greene, acting through Lapekas, to file a motion to advance her case for trial did not result from a reliance on general order 3.30. Defendants invite our attention to a remark which Judge Bartalini made to Lapekas during the hearing on defendants' motion to dismiss, when he said, "[Y]ou really weren't relying upon that general order to take you out of the difficulty that you were going to be in because of the five-year statute running." Defendants do not mention that Lapekas immediately protested and explained at length how he really was relying on general order 3.30, and that Judge Bartalini eventually accepted the explanation, remarking, "I have no problem . . . about your candor . . . . [¶] . . . [Y]ou [are] . . . one of those lawyers that takes his obligations to address the court with frankness and completeness, very, very seriously."

"If a trial court encounters statements or conduct by a defendant which lulls the plaintiff into a false sense of security resulting in inaction, and there is reasonable reliance, estoppel must be available . . . ." (*Borglund* v. *Bombardier, Ltd.*, *supra*, 121 Cal.App.3d at p. 281.) The above quoted principle applies with no less force to statements and conduct by a court, upon which a plaintiff surely should be able to rely. (See *Moran* v. *Superior Court* (1983) 35 Cal.3d 229, 240 [197 Cal.Rptr. 546, 673 P.2d 216].) Although Greene has no excuse for her July 31, 1987, failure to object to a trial date after October 30, 1987, her failure to take any steps to remedy the situation, after August 27, 1987, constituted an entirely reasonable reliance on general order 3.30.

Defendants contend that even if Greene did rely on general order 3.30, such reliance did not result in injury to her, because even if she had made a motion to advance her case for trial, the motion surely would have been denied, and that Lapekas conceded this point at the hearing on defendants' motion to dismiss. Defendants' point is irrelevant in that the reason for denial would have been that general order 3.30 made such a motion unnecessary. If defendants' point is to speculate that, in the absence of general order 3.30, a motion to advance would have been denied, we accept neither that speculation nor any remarks of Lapekas which might be interpreted as a concession that such speculation would be accurate. As Judge Bartalini put it, in remarking on the court's juggling of its trial calendar, "We just aren't going to tell you what we're going to do because we really have no way of knowing." Even if one concedes that Greene's chances of securing advancement of her case would have been slim, giving up that slim chance constituted an injury to her which makes application of the doctrine of equitable estoppel appropriate.

Equitable estoppel applies in the present case. The court apprised itself of the facts which it believed were germane to the adoption of general order 3.30. Greene had a right to believe the court's intent was as the order implicitly indicated—to achieve efficiency by processing a selected 500 cases in a certain order during a certain time period, without regard to the possible applicability of Article 3 to those cases. In the absence of any objection from defendants, Greene had a right to rely on the court's conclusion as to impossibility, impracticability, and futility, no matter what specialized knowledge of the facts she may have had. To punish Greene's exercise of these rights with a dismissal pursuant to Article 3 is precisely the sort of unfairness which the doctrine of equitable estoppel is designed to prevent.

We reverse the judgment of dismissal and remand for trial setting. Greene will recover her costs on appeal.

Newsom, Acting P. J., and Stein, J., concurred.

A petition for a rehearing was denied December 10, 1990.