[No. E010418. Fourth Dist., Div. Two. Feb. 1, 1993.]

JEANETTE LOUISE PAYNE et al., Plaintiffs and Appellants, v. CITY OF PERRIS, Defendant and Respondent.

**COUNSEL**

Robins, Kaplan, Miller & Ciresi, Joseph L. Dunn, Tod R. Dubow and Alexandra Day for Plaintiffs and Appellants.

Ferguson, Praet & Sherman, Diana L. Field and Bruce Praet for Defendant and Respondent.

## OPINION

**HOLLENHORST, J.**—In this case we are called upon to determine whether the police pursuit policy adopted by the City of Perris Police Department complies with Vehicle Code section 17004.7[1] such that defendant is immune from any liability for the death of plaintiffs' decedent. The trial court, on defendant's motion for summary judgment, concluded that the policy in question complied with section 17004.7 and therefore granted defendant's motion and entered judgment in favor of defendant. We conclude that the policy does not provide guidelines for determining when to initiate or terminate a pursuit as required by subdivision (c)(4) of the section and therefore the trial court erred in granting summary judgment in favor of defendant.

### FACTS

As the sole issue before the court is whether the Perris pursuit policy complies with section 17004.7, a lengthy and seamless rendition of the facts is unnecessary. Suffice it to say that plaintiffs' decedent was killed when an automobile driven by a criminal suspect being pursued by defendant's police officers failed to slow or yield to oncoming traffic at a T-intersection and collided with the automobile driven by plaintiffs' decedent.

Defendant originally demurred to plaintiffs' complaint, contending that the immunity under section 17004.7 barred the action. Commissioner Reikes overruled the demurrer, concluding that the guidelines were not sufficient and that a question existed as to whether the policy was actually adopted or implemented.

Thereafter, defendant moved for summary judgment, again contending that the immunity under section 17004.7 applied. The trial court found the policy adequate and therefore that defendant was entitled to the immunity. Judgment was entered accordingly and plaintiffs appeal.

### AUTHORITY TO RECONSIDER PRIOR RULING

■ Before reaching the merits of plaintiffs' contention regarding the adequacy of the written pursuit policy, we address plaintiffs' contention that

---

[1]All section references are to the Vehicle Code unless otherwise indicated.

it was error for Judge Garst, on the motion for summary judgment, to reanalyze the issue of whether the policy complied with section 17004.7, subdivision (c) and to render a ruling inconsistent with the ruling on this issue previously made by a different judge in connection with defendant's demurrer. As noted, in overruling the demurrer, Commissioner Reikes had concluded that the policy did not comply. As we explain, because the question as to whether the pursuit policy complied with section 17004.7, subdivision (c) is a question of law for the court (§ 17004.7, subd. (d)), we conclude that any error committed by Judge Garst in essentially overruling Commissioner Reikes's determination on this issue does not warrant reversal.

It is conceded that "one trial court judge may not reconsider and overrule a ruling of another judge." (*Curtin* v. *Koskey* (1991) 231 Cal.App.3d 873, 876 [282 Cal.Rptr. 706].) Thus, in *Curtin*, the appellate court concluded that it was reversible error for a second judge to grant a motion to dismiss based on the failure to bring the action to trial within three years when a different judge had previously granted plaintiff's motion to advance and had set the case for trial. Noting that "the considerations in a motion for preferential trial setting are the same as the considerations in a motion to dismiss" (*id.*, at p. 877), the court held that "[i]f in fact Judge Knight found that plaintiffs had acted with diligence, then, as in *Greene*, defendants' motion to dismiss was a request to Judge Schwartz to reconsider the order by Judge Knight. Although there is unquestionable authority for such a request for reconsideration (Code Civ. Proc., § 1008), we conclude that, as in *Ziller*, that request should have been addressed to Judge Knight." (*Id.*, at p. 878.) Accordingly, the judgment of dismissal was reversed and the matter remanded with directions to refer defendants' motion to dismiss to the first judge.

Similarly, in *Greene* v. *State Farm Fire & Casualty Co.* (1990) 224 Cal.App.3d 1583 [274 Cal.Rptr. 736], the judgment of dismissal was reversed with directions to set the matter for trial after a second judge, in granting the motion to dismiss, essentially vacated an earlier judge's determination that the failure of plaintiff to bring the matter to trial within five years was excusable because it was impracticable, futile or impossible for the case to be assigned to trial. In reversing the judgment, the appellate court concluded, "[i]n the present case, defendants were, in effect, asking Judge Bartalini to focus on the particular facts of the case and, in light of those facts, to rethink Judge McCullum's order and to see whether he agreed with it. No statutory authority exists for such a request, and Judge Bartalini erred in granting it." (*Id.*, at p. 1589.)

While both courts concluded that it was error for the second judge to revisit an issue previously determined by a different judge, the disposition of

the case on appeal was different. In *Curtin*, the court remanded the matter with directions to refer the motion to dismiss back to the judge who had granted plaintiffs' motion to advance the trial date because the basis for the judge's ruling on that motion was unclear. (*Curtin* v. *Koskey*, *supra*, 231 Cal.App.3d 873, 878.) The motion could have been granted "simply to protect plaintiffs from the expiration of the five-year dismissal period (Code Civ. Proc., § 583.310), contemplating that the issue of plaintiffs' diligence in prosecuting their action would be decided later in a motion to dismiss" (*id.*, at p. 877) or may have been based on the judge's finding that plaintiffs' delay was excusable. Because the judge had the power to reconsider its earlier ruling, remand was proper and it was unnecessary to determine whether the judge had abused his discretion in granting the motion to advance. (*Id.*, at p. 878, fn. 3.)

On the other hand, in *Greene*, the appellate court determined that defendants were estopped to relitigate the issue of whether the failure to bring the matter to trial within five years was due to impossibility, impracticability and futility. "In the absence of any objection from defendants, Greene had a right to rely on the court's conclusion as to impossibility, impracticability, and futility, no matter what specialized knowledge of the facts she may have had. To punish Greene's exercise of these rights with a dismissal pursuant to Article 3 is precisely the sort of unfairness which the doctrine of equitable estoppel is designed to prevent." (*Greene* v. *State Farm Fire & Casualty Co.*, *supra*, 224 Cal.App.3d 1583, 1592.)

*Curtin* and *Greene* both involved earlier *factual* determinations and matters left to the trial court's discretion, while in this case the issue is one of law. While this distinction does not necessarily authorize a second judge to "rethink" an issue and render an inconsistent ruling, it is significant for purposes of determining how this court should now dispose of the issue on appeal. Because we are confronted with a pure question of law—not dependent upon any factual determinations and one not left to the trial court's discretion, little purpose would be served in reversing the judgment. This court is not bound by either Commissioner Reikes's or Judge Garst's determination on the question of law presented and there is, therefore, no reason for this court not to proceed to the issue on its merits at this time. To conclude otherwise would require the parties to litigate an action possibly based on an incorrect legal premise only for this court to later reverse any subsequent judgment because of that same incorrect legal premise. We refuse to elevate form over substance in that fashion and accordingly proceed to the question of whether defendant's pursuit policy complies with section 17004.7, subdivision (c).

ADEQUACY OF THE PURSUIT POLICY

Section 17004.7, effective on January 1, 1988, provides, in pertinent part:

"(b) A public agency employing peace officers which adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued by a peace officer employed by the public entity in a motor vehicle.

"(c) If the public entity has adopted a policy for the safe conduct of vehicular pursuits by peace officers, it shall meet all of the following minimum standards:

"(1) It provides that, if available, there be supervisory control of the pursuit.

"(2) It provides procedures for designating the primary pursuit vehicle and for determining the total number of vehicles to be permitted to participate at one time in the pursuit.

"(3) It provides procedures for coordinating operations with other jurisdictions.

"(4) *It provides guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated.*" (Italics added.)

█ The statute has two purposes. First and obviously, it is intended to confer immunity on governmental entities. (*Hooper* v. *City of Chula Vista* (1989) 212 Cal.App.3d 442, 456 [260 Cal.Rptr. 495]; *Kishida* v. *State of California* (1991) 229 Cal.App.3d 329, 336 [280 Cal.Rptr. 62].) Second, "the sponsors . . . hoped that the adoption of guidelines [would] reduce the frequency of accidents . . . ." (*Hooper* v. *City of Chula Vista, supra,* at p. 456, internal quotes omitted.)

Since its enactment, two California courts have applied section 17004.7 to provide immunity to a government entity from any liability to plaintiffs injured during a police pursuit.[2] In *Kishida* v. *State of California, supra,* 229 Cal.App.3d 329, plaintiff conceded the pursuit policy satisfied the requirements of section 17004.7, subdivision (c). (229 Cal.App.3d at p. 334.) This

_____

[2]While the court in *Hooper* discussed section 17004.7, the events in that case occurred before the statute's effective date. In *Montes* v. *United States* (S.D.Cal. 1991) 778 F.Supp. 19, the district court concluded the United States Border Patrol's policy satisfied section 17004.7. The opinion does not discuss the language of the policy and therefore is of no assistance.

court rejected plaintiff's contention defendant must establish the pursuing officers actually complied with the pursuit policy before the immunity applied. (*Id.*, at p. 335.)

Subsequently in *Weiner* v. *City of San Diego* (1991) 229 Cal.App.3d 1203 [280 Cal.Rptr. 818], Division One of this district concluded that the policy in that case did satisfy the requirements of subdivision (c) of section 17004.7. "Finally, our independent review (see *King* v. *Larsen Realty, Inc.* (1981) 121 Cal.App.3d 349, 356 . . .) reveals City's written policy complies with each factor set forth in section 17004.7, subdivision (c). The procedures for initiating a pursuit, designating the primary pursuit vehicle and the total number of vehicles to be involved at any one time in the pursuit are contained in sections I and III of the Pursuit Procedures. (See §§ I, subds. (A)-(D), III, subds. (A)(1) and (2), (C)(2) and (3), (D).) When a pursuit is initiated, section III, subdivisions (A)(2) and (B) provide for supervisory control of the pursuit. Section III, subdivision (G) provides for coordinating operations with other jurisdictions and subdivision (D) discusses the policies and guidelines concerning termination of a pursuit. The interests of public safety are discussed throughout the entire written document." (*Weiner, supra*, at p. 1211, fn. omitted.)

The pursuit policy before the court in *Weiner* was significantly different from the policy we are reviewing. The San Diego pursuit policy "provides an officer may initiate a pursuit when, inter alia, a known wanted felon is in the vehicle or the occupants of the vehicle have committed a crime in the officer's presence." (*Colvin* v. *City of Gardena* (1992) 11 Cal.App.4th 1270, 1284 [15 Cal.Rptr.2d 234] [italics omitted].) It further "sets forth . . . factors an officer should consider in determining whether a pursuit should be terminated: vehicular traffic, pedestrian, roadway and environmental conditions; the violation for which the suspect is wanted; whether the suspect is known to be a juvenile; and, whether the suspect has been identified to the point that later apprehension can be accomplished." (*Ibid.*, italics omitted.)

Most recently, Division Three of the Second Appellate District has concluded that a policy substantially identical with the Perris policy did not satisfy section 17004.7, subdivision (c). (*Colvin* v. *City of Gardena, supra*, 11 Cal.App.4th 1270.) The policy in that case provided: "Pursuits may be initiated when an officer has reasonable cause to stop a vehicle and the driver fails to stop as required by law." (*Id.*, at p. 1283.) On when a pursuit should be discontinued the policy stated: "Justification to continue a pursuit will be based on what reasonably appears to be the facts known or perceived by the officer. Officers should consider discontinuing a pursuit when it poses a serious and unreasonable risk of harm to the pursuing officer or to the

public balanced against the seriousness of the violations, or when directed to do so by a supervisor." (*Id.*, p. 1283.) Because there were no "reasonably specific criteria to give direction to officers in the field" (*id.*, at p. 1282), the court concluded the policy " 'impermissibly delegates basic policy matters to police [officers]' " and therefore "lack[ed] as minimum standards the guidelines required by subdivision (c)(4)." (*Id.*, at p. 1285.) We reach the same conclusion with respect to the Perris pursuit policy.

■■■ Plaintiffs' primary contention in this case is that the policy does not provide guidelines as required in paragraph (4) of section 17004.7, subdivision (c). Specifically, plaintiff challenges section II of the policy entitled "When Pursuits Should Be Discontinued." This section provides: "Officers should consider discontinuing a pursuit when it poses a serious and unreasonable risk of harm to the pursuing officer or to the public, balanced against the seriousness of the violation(s). [¶] Justification to continue a pursuit will be based on what reasonably appears to be the facts known or perceived by the officer."

Plaintiffs contend that this language fails to provide any guidelines and instead "amounts to an unartful attempt to guise what is effectively unbridled officer discretion." They argue that to constitute "guidelines," the provisions must be "objective and prospective" and rely on Webster's New Universal Unabridged Dictionary (2d ed. 1983) which defines guideline as "a standard or principle by which to make a judgment or determine a policy or course of action." They also rely on the definition of "guide" which means "to point out the way for; direct a cause; conduct; lead" and "to give instruction to; to train."

Armed with these definitions, plaintiffs argue that "[i]nstead of establishing the required 'guidelines' for determining when an unreasonable risk to the public exists, defendant's policy simply states that 'justification to continue a pursuit will be based on what reasonably appears to be the facts known or perceived by the officer.' " In other words, rather than guiding *future* conduct, the language merely provides a standard for evaluating *past* conduct. Such a "guideline," in plaintiffs' view, fails to serve the Legislature's goal in enacting section 17004.7 of protecting the public from "unnecessarily dangerous pursuits" and reducing "the frequency of accidents."

■■■ We agree that to constitute guidelines for determining "when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated" (§ 17004.7, subd. (c)(4)), the policy must do more than simply advise the pursuing officers to exercise their discretion and use their best

judgment. Presumably, officers were using their best judgment *before* enactment of section 17004.7 and without the benefit of a written pursuit policy and yet the public entity remained exposed to possible liability. Had the Legislature intended the public entity to be immune simply because the pursuing officers used their best judgment, it could have simply granted the entity blanket immunity similar to that found in section 17004 for the pursuing officers.

Instead, the Legislature conditioned immunity on the public entity's adoption of a written pursuit policy. The requirement of adoption of a written policy which complies with section 17004.7, subdivision (c) obviously was intended to provide entity control over the pursuing officers during a pursuit. (*Kishida* v. *State of California, supra,* 229 Cal.App.3d 329, 337.) The requirement of entity control, we believe, in turn was intended to reduce the number and frequency of unreasonably dangerous pursuits and the resulting accidents.

A policy which merely memorializes the unfettered discretion to initiate or terminate a pursuit or which allows each officer to use his or her own subjective standards for determining when a pursuit should be initiated, continued or terminated fails to provide any entity control. It wholly fails to provide any assurance that unnecessarily dangerous pursuits will not be undertaken and does nothing to reduce the frequency of accidents.

To provide effective entity control and thereby possibly reduce the frequency of accidents, the policy must control and channel the pursuing officer's discretion by providing objective standards by which to evaluate whether the pursuit should be initiated or terminated. ██ ██ At the very least it should instruct and direct the officers on what factors should be considered in deciding whether to pursue the fleeing suspect.[3]

 Here, the policy states in broad terms that a pursuit should be terminated when in the officer's judgment continued pursuit poses a serious

---

[3]At argument counsel for the city contended the delineation of factors to be considered by the officer in deciding whether to initiate, continue or terminate a pursuit will inject issues of fact such as whether the speed was too fast, the road conditions were safe for a pursuit, etc. This argument suggests a retreat from our decision in *Kishida* v. *State of California, supra,* 229 Cal.App.3d 329 wherein this court held that the public entity's immunity is not predicated upon a showing that the officers actually complied with the pursuit policy. To the contrary, we continue to believe that actual compliance during a particular pursuit is not required.

Alternatively, city argued that if actual compliance is not required then no purpose would be served in requiring guidelines. Again we disagree. The Legislature presumably believed that the mere existence of established guidelines will prevent some pursuit-related accidents. At the same time, the Legislature presumably was aware that not all accidents will be prevented simply by adoption of a pursuit policy. Accidents will inevitably continue to occur—sometimes because the officer failed to comply with the policy and other times notwithstanding compliance. The decision to grant public entities blanket immunity upon adoption of a valid pursuit policy and without also requiring a showing that the policy was

and unreasonable risk of harm to the public or to the officer. It fails, however, to provide any guidance to the officer in how to determine whether the pursuit poses such a risk or what factors should be considered in making that determination. Instead, it simply states that justification will be based on what is reasonably known or perceived by the officer. Not only does this guideline provide no direction, it leaves each individual officer essentially free to interpret the guideline as he or she chooses—subject to whatever subjective standards the officer may decide to employ. Thus, the guideline is subject to as many varied interpretations as there are officers. It is equivalent to no guideline for it fails to provide any objective criteria to assist the officer in the exercise of his discretion. Using the Webster's definition of "guideline," it is readily apparent that defendant's policy fails to provide any "standard[s] or principle[s] by which to make a judgment or determine a . . . course of action." (Webster's New Universal Unabridged Dict. (2d ed. 1983) p. 808.)

Nor do we believe the provision requiring supervisory control over the pursuit provides an adequate measure of control over the pursuing officer's discretion. The policy also fails to provide any guidelines to assist the supervisor in determining whether to discontinue a pursuit but instead employs the same broad and amorphous language found in section II. Moreover, subdivision (c) of section 17004.7 requires *both* supervisory control *and* guidelines. It is evident the Legislature did not intend supervisory control over the pursuit to substitute for guidelines. Accordingly, we conclude the policy fails to comply with subdivision (c)(4).

■ Defendant contends that in determining whether the policy provides guidelines, "the court must look to the opinions of California Chiefs of Police" and therefore because defendant's pursuit policy is similar (if not identical) to the model policy drafted by the California Police Chiefs Association, similar to the model pursuit policy developed by the California Peace Officer Association and to the Riverside County Law Enforcement Administrators Association's model pursuit policy, we should find defendant's policy complies with section 17004.7, subdivision (c).

We reject defendant's implicit suggestion that the opinions of the various law enforcement associations on the adequacy of their respective model policies should govern or control our determination. The question presented, we note once again, is a pure question of law for this court to decide.

The legislative materials relied upon by defendant do not persuade us that the Legislature intended this court to be controlled by the various associations' opinion as to what constitutes sufficient guidelines or that the Legislature has in any way given its approval to the model policies prepared by

---

followed during a particular pursuit was a policy determination made by the Legislature. It is not for this court to reexamine the wisdom of that determination.

the various associations. The material cited by defendant, which is entitled "Governmental Tort Reform Legislative Package" and which apparently is from the legislative bill file of Assemblyman Stirling, the author of the bill, states, in pertinent part:

"This is intended to encourage agencies to adopt express guidelines that should reduce the frequency of accidents, while leaving the fundamental law-enforcement decision about when and how to undertake a pursuit free from concerns about liability should the suspect cause an accident. *The California Association of Police Chiefs and Sheriffs has indicated its intention to develop proposed guidelines for local police departments to implement AB 1912 should it become law, and will work with us and other organizations in encouraging departments throughout the state to adopt such guidelines.*" (Italics added.)

It is readily apparent from this passage that at the time section 17004.7 was enacted, no such model guidelines existed. Rather, as the passage states, the California Association of Police Chiefs and Sheriffs intended to prepare such guidelines *if Assembly Bill No. 1912 became law.* Further there is no indication that any model guidelines were actually considered by the Legislature when section 17004.7 was drafted or enacted. Thus, the model policies relied upon by defendant are of little value in determining what the Legislature intended when it required the policy to contain "guidelines."

Relying on *Weiner* v. *City of San Diego, supra,* 229 Cal.App.3d 1203, defendant also appears to suggest that because "the facts of each situation from which a pursuit might arise are different" (*id.,* at p. 1211) more detailed guidelines would unduly hamper and restrict law enforcement. There is no evidence to support that conclusion. To the contrary, the evidence presented by plaintiff through the declaration of D. P. Van Blaricom suggests that other law enforcement agencies in other jurisdictions have been able to draft express guidelines which presumably do not unduly hamper law enforcement. For example, the Bellevue, Washington Police Department policy provides:

"The following factors should be considered when determining whether any pursuit should be initiated, continued or terminated:

"(1) the seriousness of the originating crime and its relationship to community safety;

"(2) safety of the public in the area of the pursuit;

"(3) safety of the pursuing officer(s);

"(4) volume of vehicular traffic;

"(5) volume of pedestrian traffic;

"(6) location of pursuit;

"(7) speeds involved;

"(8) time of day;

"(9) weather conditions;

"(10) road conditions;

"(11) familiarity of the officer and supervisor or commander with the area of pursuit;

"(12) quality of radio communications between pursing unit(s) and the dispatcher and supervisor; and

"(13) the capability of the police vehicles involved.

"An officer directly involved in a vehicular pursuit will be subject to departmental discipline for the continuation of a pursuit when, on the basis of the facts known to the officer and considered with the significant factors set forth in this procedure, a person of reasonable caution would be justified in believing that the level of danger to the community created by the pursuit outweighs the necessity of immediate apprehension, or, if pursuit is continued after it has been ordered terminated."

The National Law Enforcement Policy Center's policy provides:

"The pursuing officer shall consider the following factors in determining whether to initiate a pursuit:

"(1) the performance capabilities of the police vehicle;

"(2) the condition of the road surface upon which the pursuit is being conducted;

"(3) the amount of vehicular and pedestrian traffic in the area; and

"(4) weather conditions.

"Pursuit shall be immediately terminated in any of the following circumstances:

"(1) weather or traffic conditions substantially increase the danger of pursuit beyond the worth of apprehending the suspect;

"(2) the distance between the pursuit and fleeing vehicles is so great that further pursuit is futile; or

"(3) the danger posed by continued pursuit to the public, the officers or the suspect is greater than the value of apprehending the suspect(s)."

While these policies differ in the degree of specificity regarding the factors to consider, they stand in sharp contrast to defendant's policy which fails to delineate any specific factors to be considered in deciding when to initiate or terminate a pursuit. We of course do not decide whether these policies would comply with section 17004.7, subdivision (c)(4) but note them simply to refute defendant's suggestion that more express guidelines cannot be enacted without crippling law enforcement.

 Because we conclude the policy fails to provide guidelines as required in section 17004.7, subdivision (c)(4), it is unnecessary to determine whether the policy otherwise complies with paragraphs (1) through (3). It is also unnecessary to address plaintiffs' contention that the policy was not "implemented." Having concluded that the policy fails to comply with subdivision (c)(4), it follows that defendant is not entitled to the immunity under section 17004.7. Accordingly, the trial court erred in granting summary judgment.

DISPOSITION

Judgment reversed.

Dabney Acting P. J., and McDaniel J.,* concurred.

Respondent's petition for review by the Supreme Court was denied April 29, 1993.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.