[No. F049383. Fifth Dist. Feb. 5, 2007.]

ROSA MARIA ALCALA et al., Plaintiffs and Appellants, v.
CITY OF CORCORAN et al., Defendants and Respondents.

COUNSEL

Perez, Williams & Medina, Robert Gray Williams and Lazaro Salazar for Plaintiffs and Appellants.

Law Offices of Myers & Mayfield, Gregory L. Myers and Megan M. Hager for Defendants and Respondents.

OPINION

**WISEMAN, Acting P. J.**—Tragically, Jose Jesus Alcala died one year after being hit by a vehicle driven by Corcoran police officers who were engaged in a high-speed pursuit of a murder suspect. We conclude that the trial court properly denied the motion for judgment on the pleadings, which was brought by Mr. Alcala's family. In doing so, we conclude that the City of Corcoran

and the Corcoran Police Department are entitled to immunity under Vehicle Code section 17004.7,[1] which grants immunity to public entities and agencies that have adopted a written policy governing vehicular pursuits.

## PROCEDURAL HISTORY

This is an appeal from a final judgment entered in favor of respondents City of Corcoran (city) and Corcoran Police Department (department) (collectively Corcoran) in a personal injury and wrongful death action brought by appellants Rosa Maria Alcala, Claudia Solis, Alejandra Cabrera, Jose J. Alcala, Monica Martinez, Adrian Alcala, and Laura Cabrera (collectively Alcala). Their decedent, Jose Jesus Alcala, was injured severely in an accident resulting from a high-speed pursuit of a murder suspect initiated by Corcoran police officers. He ultimately died of his injuries approximately one year later. The action, seeking recovery for personal injury and wrongful death, was filed naming numerous parties as defendants, including both the city and the department. Corcoran answered the complaint with a general denial and alleged a number of affirmative defenses, including the statutory immunity provided by section 17004.7 for public entities that have adopted a written policy governing vehicular pursuits.

With the agreement of the parties, the trial court bifurcated the immunity issue for court trial. (Corcoran had unsuccessfully sought summary judgment on the immunity issue earlier in the action.) After considering the arguments of both parties, the trial court denied Alcala's motion for judgment on the pleadings and entered judgment in favor of Corcoran, finding that the city and department are one entity and that both are immune from liability under section 17004.7.

The facts surrounding the pursuit and the accident are not relevant to the issues raised on appeal. The circumstances surrounding the adoption and nature of the department's vehicular pursuit policy will be set forth in our discussion of the issues.

## DISCUSSION

### I. *Definition of public agency*

The trial court found that the city and the department were one entity and not distinguishable from one another for purposes of the immunity section

---

[1] All further references are to the Vehicle Code unless otherwise noted.

17004.7 grants to "public entities." The city established its police department with the enactment of Corcoran Municipal Ordinance No. 323 N.S., which authorizes the creation of the department and the appointment of a police chief to manage the department. The department and its chief answer to the city manager, who is given direct supervision of the police chief under the ordinance. Alcala does not dispute that the city and the department are one "public entity," but argues that, even though the city is a "public entity," it does not follow that it is a "public agency," and the immunity in section 17004.7[2] is afforded only to public agencies. Since the department is a subdivision of the city it is also not a public agency. (See discussion in *Colvin v. City of Gardena* (1992) 11 Cal.App.4th 1270, 1279–1280 [15 Cal.Rptr.2d 234] (*Colvin*) [police department is public entity and political subdivision of city]; see also *Brumer v. City of Los Angeles* (1994) 24 Cal.App.4th 983, 987 [29 Cal.Rptr.2d 515] [pursuit policy ordered into effect by city's chief of police is, within meaning of § 17004.7, policy adopted by city].) Alcala points to the definition of "public agency" which is found in Government Code section 53050 and argues that this definition controls when interpreting the application of section 17004.7. Government Code section 53050 defines a public agency as "a district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the state or a county, city and county, or city."

■ The interpretation of a statute is a question of law and subject to independent review on appeal. (*Hansen Mechanical, Inc. v. Superior Court* (1995) 40 Cal.App.4th 722, 727 [47 Cal.Rptr.2d 47].) We agree with the trial court's implicit finding that Government Code section 53050's definition of a public agency does not govern the application of section 17004.7. First, Government Code section 53050's definition is expressly limited to the article in which it appears by the language, "as used in this article"; it does not pretend to define the term for use in all statutes. Secondly, section 17004.7 does not reference the Government Code definition, and it is part of a separate Vehicle Code chapter governing liability of all public entities for death or injury of persons or property proximately caused by negligent or wrongful acts of public employees. (§ 17000 et seq.) Section 17000 provides applicable definitions for the remaining portions of the chapter. Although the

---

[2] Section 17004.7 was amended in 2005. The amendment made no substantive changes to the operative provisions of the statute as they relate to this case. The substantive amendment states: "(e) This section shall become inoperative on July 1, 2007, and, as of January 1, 2008, is repealed, unless a later enacted statute that is enacted before January 1, 2008, deletes or extends the dates on which it becomes inoperative and is repealed." (Stats. 2005, ch. 485, §§ 10, 11, eff. Jan. 1, 2006, inoperative July 1, 2007, repealed Jan. 1, 2008.) Subdivision (e) and the changes afforded by the new provision effective January 1, 2008, are not relevant to the issue of whether a city is a "public agency" under the statute.

section does not currently define the term "public agency," a review of the history of the chapter, specifically section 17000, and a review of the current version of section 17004.7, lead us to conclude that the terms "public entity" and "public agency" are used interchangeably and both terms include a city within their definitions.

 Prior versions of section 17000 defined the term "public agency," used in prior versions of section 17001, as "the State, any county, municipal corporation, district and political subdivision of the State, or the State Compensation Insurance Fund." (Former § 17000, added by Stats. 1959, ch. 3, § 2, p. 1523.) This definition of "public agency" is unmistakably broader in scope than the definition of "public agency" as defined in Government Code section 53050 and unquestionably includes incorporated cities. (Corcoran was incorporated in 1914 (<http://www.cityofcorcoran.com> [as of Feb. 5, 2007]).) Section 17000 was amended in 1965 and the term "public agency" was changed to the term "public entity." (Stats. 1965, ch. 1527, § 1, p. 3620.) The amendment did not substantially change the scope of the statute's reach because the current definition given for "public entity" in section 17000 is similar to the one previously given for the term "public agency." "Public entity," as currently used in the chapter, means "the state, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the state." (§ 17000, as amended by Stats. 1965, ch. 1527, § 1, p. 3620.) Cities are included under either the former or the current versions. The definitions found in section 17000 have always been designated as applying to the entire chapter. (See former and current versions of § 17000.) There is no reason to apply a more narrow definition to either the term "public entity" or "public agency" when either is used in section 17004.7. (*Jacobs v. Grossmont Hospital* (2003) 108 Cal.App.4th 69, 75 [133 Cal.Rptr.2d 9] [courts must examine context of statutory language, adopting construction that best harmonizes statute internally and with related statutes], citing *Pacific Gas & Electric Co. v. County of Stanislaus* (1997) 16 Cal.4th 1143, 1152 [69 Cal.Rptr.2d 329, 947 P.2d 291].)

Our conclusion is reaffirmed by the use of the terms "public entity" and "public agency" within section 17004.7[3] itself. The section uses the terms "public entity" and "public agency" interchangeably. For example, section 17004.7 provides that "[a] *public agency* employing peace officers that adopts a written policy on vehicular pursuits complying with subdivision (c) is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being

---

[3] Section 17004.7 was added to the chapter in 1987. (Stats. 1987, ch. 1205, § 1, p. 4301.)

operated by an actual or suspected violator of the law who is being, has been, or believes he or she is being or has been, pursued in a motor vehicle by a peace officer employed by the *public entity*." (§ 17004.7, subd. (b), italics added.) The statute continues, "[i]f the *public entity* has adopted a policy for safe conduct of vehicular pursuits by peace officers . . . ." (§ 17004.7, subd. (c), italics added.) Unless the two terms are read interchangeably, the statute makes no sense. There is no way to reconcile the phrase "[a] public agency employing peace officers" with the phrase "a peace officer employed by the public entity," when used within the same subdivision, unless the two are given essentially the same meaning. (§ 17004.7, subd. (b).) Likewise, there is no way to reconcile the reference to a "public agency" with a written policy concerning vehicular pursuits found in subdivision (b) with the reference to a "public entity" that has adopted a policy for the safe conduct of vehicular pursuits found in subdivision (c), unless the two terms are given equivalent meanings.

■ Alcala has offered no alternative meanings for these terms to support the premise that "public agency," but not "public entity," excludes cities from its definition. Alcala has also offered no authority to support the contention that we should look to the more restrictive definition of "public agency" found in Government Code section 53050 when applying section 17004.7, instead of looking to the definitions found in both the former and current versions of section 17000. Each portion of a statute must be read in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute. (*People v. Amwest Surety Ins. Co.* (1997) 56 Cal.App.4th 915, 919–920 [66 Cal.Rptr.2d 29].) The Legislature's concern when enacting section 17004.7 was that peace officers might be deterred from initiating pursuits to the detriment of public safety by the threat of potential civil liability for accidents caused by fleeing suspects. The Legislature also intended to encourage public employers of peace officers to adopt express safe-pursuit guidelines and, at the same time, provide immunity in order to avoid deterring police officers from initiating high-speed vehicle pursuits when there was a need to do so. (*Hooper v. City of Chula Vista* (1989) 212 Cal.App.3d 442, 456 [260 Cal.Rptr. 495]; see also *Ketchum v. State of California* (1998) 62 Cal.App.4th 957, 964 [73 Cal.Rptr.2d 152] [statute's intent is to expand immunity for governmental entities employing police officers likely to engage in high-speed pursuits].) Given that the great majority of police officers working in this state are employed by a "state or a county, city and county, or city," all public entities excluded under the definition of "public agency" found in Government Code section 53050, applying this restrictive definition in the application of section 17004.7,

would undermine the expressed intent of the Legislature. Section 17004.7 is intended to increase the immunity afforded public entities who employ law enforcement officers from suspect-caused accidents and resulting lawsuits. (*Hooper v. City of Chula Vista, supra*, 212 Cal.App.3d at p. 456, citing Assem. Off. of Research, Concurrence in Sen. Amends. to Assem. Bill No. 1912 (1987–1988 Reg. Sess.).)

 For this reason, we conclude that section 17004.7 grants immunity to cities generally, and Corcoran specifically, when the statutory requirements of a written policy are met.

II. *Adoption of pursuit policy*

 Section 17004.7 creates a limited exception to the general rule of public entity liability for vehicle pursuits if a public entity employing peace officers adopts a policy meeting the requirements set out in the statute. (*Nguyen v. City of Westminster* (2002) 103 Cal.App.4th 1161, 1164 [127 Cal.Rptr.2d 388].) Alcala contends that the trial court's finding that Corcoran adopted a written pursuit policy is not supported by the record because Police Chief Reuben Shortnacy lacked personal knowledge of when the policy, Order No. 6.1, was actually adopted. Section 17004.7 provides immunity "if, *but only if*, the specified written policy is adopted." (*Thomas v. City of Richmond* (1995) 9 Cal.4th 1154, 1162 [40 Cal.Rptr.2d 442, 892 P.2d 1185].) Whether a policy has been validly adopted under section 17004.7 is a question of law for the trial court (*Ketchum v. State of California, supra*, 62 Cal.App.4th at p. 965), which we review de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800 [35 Cal.Rptr.2d 418, 883 P.2d 960] [questions of law reviewed under nondeferential standard of review].)

The written policy was admitted as evidence at trial. It is entitled Corcoran Police Department's "Vehicle Pursuit Policy," and became effective February 21, 1995. It states that the purpose of the policy is "to outline the responsibilities and duties of members involved in pursuits and to establish guidelines that should assist members in deciding a course of action when involved in a pursuit[,] and to reduce potential hazards to the public and pursuing members generated by police pursuits of fleeing suspects, while assuring the apprehension of law violators." (Capitalization omitted.)

Chief Shortnacy testified that he was employed by the department in 1996 as a sergeant and was later promoted to lieutenant. He was promoted to acting police chief in November 1999 and to the permanent position in May 2000. Shortnacy said when he was hired the department maintained a policies

and procedures manual, which he was required to review as part of his field training responsibilities. One of the policies in the manual was Order No. 6.1. When he was appointed chief, Shortnacy was responsible for reviewing all existing policies and procedures, and he adopted Order No. 6.1 as the pursuit policy and procedure for the department. In order to assure that all department officers were familiar with department policies, Shortnacy circulated the pursuit policy and required that all officers acknowledge reading Order No. 6.1 by initialing the memo circulated with the policy. City Ordinance No. 323 N.S., section 1-14-4, expressly provides that the police chief, "in addition to policies transmitted to him by the City Manager, shall establish other policies, directives, rules and regulations for the administration and operations of the Department as he sees fit."

This is sufficient to establish that Order No. 6.1 was the formally adopted written pursuit policy for the department. The policy was in the department's policies and procedures manual when Shortnacy was hired by the department, and he used it as a field training officer. As police chief, he formally readopted Order No. 6.1 as the department's policy, which was within his authority to do. (See *Colvin, supra*, 11 Cal.App.4th at p. 1280 [police chief, as head of public agency, had authority to adopt policy by issuing directive]; accord, *Brumer v. City of Los Angeles, supra*, 24 Cal.App.4th at p. 987.)

■ This is not evidence of implementation as Alcala contends. Implementation, whether the policy is followed, is not relevant to whether the immunity applies. (*Nguyen v. City of Westminster, supra*, 103 Cal.App.4th at p. 1167.) The evidence supports a reasonable inference that Order No. 6.1 was adopted by the department as its formal written policy on high-speed pursuits. We draw no conclusion from this evidence about whether the policy was implemented. Nor do we believe it was error to allow Shortnacy to testify. He is chief of police, the most qualified person to testify about department policy, and the one authorized by the city to adopt the department's policy on vehicle pursuits. (See *Ketchum v. State of California, supra*, 62 Cal.App.4th at pp. 965–966.)

III. *Policy's compliance with statutory requirements*

■ In order for the immunity to apply under section 17004.7, a public entity must adopt a pursuit policy that clearly and with specificity sets forth standards to guide officers in the field. (*Berman v. City of Daly City* (1993) 21 Cal.App.4th 276, 281 [26 Cal.Rptr.2d 493] (*Berman*).) A pursuit policy must do more than simply advise pursuing officers to exercise their discretion and

use their best judgment in initiating, conducting, and terminating a pursuit. (*Id.* at p. 282, citing *Payne v. City of Perris* (1993) 12 Cal.App.4th 1738 [16 Cal.Rptr.2d 143] (*Payne*).) Whether a pursuit policy is sufficient under the statute is a question of law for the trial court, subject to independent review on appeal. (*Colvin, supra,* 11 Cal.App.4th at p. 1281.) Order No. 6.1 was adopted for the purpose of complying with section 17004.7.

Subdivision (c) of section 17004.7 sets forth the minimum standards required before immunity is available. It provides:

"(c) If the public entity has adopted a policy for the safe conduct of vehicular pursuits by peace officers, it shall meet all of the following minimum standards:

"(1) It provides that, if available, there be supervisory control of the pursuit.

"(2) It provides procedures for designating the primary pursuit vehicle and for determining the total number of vehicles to be permitted to participate at one time in the pursuit.

"(3) It provides procedures for coordinating operations with other jurisdictions.

"(4) It provides guidelines for determining when the interests of public safety and effective law enforcement justify a vehicular pursuit and when a vehicular pursuit should not be initiated or should be terminated." (§ 17004.7, subd. (c).)

Alcala argues that Corcoran's policy does not meet the minimum standards of section 17004.7, subdivision (c)(4)[4] because it does not set forth specific criteria or guidelines for initiating, continuing, and/or terminating a pursuit. Alcala relies heavily on the decisions in *Payne, Berman,* and *Colvin,* each one finding that the policy challenged lacked specificity and was therefore

---

[4] Subdivision (c) has been substantially expanded in the newly enacted version of section 17004.7 that becomes operative July 1, 2007. The intent of the new statute is to further reduce the number of peace officer vehicular pursuits. (Stats. 2005, ch. 485, §§ 1, 11.) The new law adds to the number of minimum standards generally, increasing the number from four to 12, and by identifying new factors not listed in earlier versions of the statute (for example, pursuit intervention tactics, speeds throughout the pursuit, air support, and postpursuit analysis). Many of these additional factors are already included in Corcoran's policy. We need not consider whether Corcoran's policy meets the more stringent requirements of the revised section 17004.7.

insufficient under the statute. Alcala argues that, because the general language disapproved in *Payne*, *Berman*, and *Colvin* can also be found in Order No. 6.1, we must reach a similar result and conclude that Corcoran's policy is also insufficient. Alcala does not appreciate, however, that unlike the policies in *Payne*, *Berman*, and *Colvin*, the Corcoran policy does not stop with generalized statements instructing officers to use good judgment and to weigh the risks involved, using language such as, "[d]epartment members are expected to use sound judgment in deciding whether or not the threat to safety of further pursuit outweighs the benefit to the public should the arrest be made," and "[p]ursuit should be initiated and continued when such threat to safety is not out of proportion to the offense or offenses involved." In addition to this language, which is admittedly similar to the language in *Payne*, *Berman*, and *Colvin*, Corcoran's policy identifies specific criteria designed to provide the guidelines for officers mandated by subdivision (c)(4). For example, language in paragraph II of the Corcoran policy instructs officers to initiate a vehicle stop only within one-half a normal city block to discourage traffic violators from attempting to flee. The paragraph also tells officers to consider the weather; road conditions; lighting; traffic; character of the neighborhoods through which the pursuit will pass; the seriousness of the violation; the driving skill of the officer; the condition and repair of the police vehicle; and the nature of the offense.

The policy tells officers that the benefit of enforcing minor traffic laws does not warrant "the risks attendant to initiation and/or continuation of a pursuit," and prohibits officers from initiating a pursuit to enforce minor traffic violations. The policy also instructs officers to stop a pursuit within five minutes of initiation if the initial attempt to stop was for a misdemeanor and no more serious offense becomes known or reasonably suspected within that timeframe. This paragraph further instructs officers that they cannot treat a minor offense as a more serious offense based on hunch, speculation, or general belief that an occupant has committed a more serious offense, but must do so only where there are known facts leading to a reasonable suspicion that a wanted felon is in the vehicle. A similar provision was approved in *Weiner v. City of San Diego* (1991) 229 Cal.App.3d 1203 [280 Cal.Rptr. 818]. Paragraph III instructs officers that a pursuit must be terminated if 1) the subject can be identified so that later apprehension can be accomplished without the pursuit; 2) the officer is unfamiliar with the area and is unable to relay his or her location to dispatch and/or responding units; or 3) the unit's emergency equipment is not functioning properly.

Paragraph XVI of the policy sets out a separate provision entitled "Pursuit Guidelines" which provides additional assistance to officers. (*McGee v. City of*

*Laguna Beach* (1997) 56 Cal.App.4th 537, 547 [65 Cal.Rptr.2d 506] [court looks to totality of policy in evaluating sufficiency under section 17004.7].) It states that "In all pursuit situations extreme caution should be practiced to provide the maximum amount of protection for you, your partner, and the motoring public. Particular care should be taken when involved in pursuit driving upon congested roadways. [¶] . . . Anytime an officer engages in pursuit, and particularly when such occurs upon congested roadways, the officer must consider the following: . . . ." The listed criteria include the seriousness of the known offense; the type of roadway; the number and type of intersections; the present road conditions; and the potential hazard that would be created by the pursuit for the officers, pedestrians, and other drivers. The section also instructs that speed must be considered in relation to roadway and traffic conditions.

In contrast, the policy in *Payne* consisted of two small paragraphs, providing only that " '[o]fficers should consider discontinuing a pursuit when it poses a serious and unreasonable risk of harm to the pursuing officer or to the public, balanced against the seriousness of the violation(s). [¶] Justification to continue a pursuit will be based on what reasonably appears to be the facts known or perceived by the officer.' " (*Payne, supra*, 12 Cal.App.4th at p. 1746.) No objective criteria were stated.

The policy disapproved in *Colvin* was similarly bare bones, stating simply that " '[p]ursuits may be initiated when an officer has reasonable cause to stop a vehicle and the driver fails to stop as required by law. . . . Justification to continue a pursuit will be based on what reasonably appears to be the facts known or perceived by the officer. Officers should consider discontinuing a pursuit when it poses a serious and unreasonable risk of harm to the pursuing officer or to the public balanced against the seriousness of the violations, or when directed to do so by a supervisor.' " (*Colvin, supra*, 11 Cal.App.4th at p. 1283.) The *Colvin* policy also fails to provide objective guidelines for officers to use when determining whether a pursuit should be initiated, continued, and/or terminated.

The policy considered by the court in *Berman* contains little more, reading that " '[p]ursuits should normally be initiated when, in the officer's [judgment], an individual clearly exhibits an intent to avoid arrest by using a vehicle to flee. . . . Officers intending to stop a vehicle should be within close proximity to the violator's vehicle before using the red lights and siren and attempting to stop the vehicle. . . . [¶] . . . Pursuit should be initiated and continued when such threat to safety is not out of proportion to the offense or offenses involved.' " (*Berman, supra*, 21 Cal.App.4th at p. 282.)

The scope of Order No. 6.1 far exceeds that of the three policies found wanting in *Payne, Berman,* and *Colvin.* (*Brumer v. City of Los Angeles, supra,* 24 Cal.App.4th at p. 987 [in *Payne, Berman,* and *Colvin,* pursuit policy went little beyond paraphrasing statute, leaving officers with unfettered discretion].) In our opinion, Corcoran's policy provides sufficient criteria to " 'control and channel the pursuing officer's discretion' " and therefore meets the minimum standards of section 17004.7, subdivision (c). (*Berman, supra,* 21 Cal.App.4th at p. 284; see also *Ketchum v. State of California, supra,* 62 Cal.App.4th at p. 967 [guidelines need not address every specific situation; gives guidelines based on weather, road conditions, traffic, vehicle capabilities, and ability to identify and later apprehend suspect]; *Billester v. City of Corona* (1994) 26 Cal.App.4th 1107, 1121 [32 Cal.Rptr.2d 121] [policy found sufficient with similar factors listed in policy]; *Brumer v. City of Los Angeles, supra,* 24 Cal.App.4th at p. 988 [although no list of factors, policy sufficiently provided guidelines for officers].)

■ Corcoran's policy meets the other three statutory mandates as well. The statute requires that there be supervisory control of the pursuit if available (§ 17004.7, subd. (c)(1)), and Order No. 6.1 extensively outlines the role of a supervisor in exercising control of the pursuit, including monitoring and reevaluating the pursuit under department criteria, terminating a pursuit when the known facts do not warrant initiation and/or continuation of the pursuit, controlling the number of units involved in the pursuit, and ensuring proper radio communication and notification to allied agencies. The statute also requires a mechanism for designating the primary pursuit vehicle and for determining the total number of vehicles in the pursuit. (§ 17004.7, subd. (c)(2).) Order No. 6.1 does both, limiting the number of units to two, unless more are added by a supervisor, and designating the initiating officer as the primary vehicle. Lastly, section 17004.7, subdivision (c)(3), requires a provision coordinating the pursuit with other jurisdictions. Order No. 6.1 contains a detailed section setting forth notification requirements, mechanisms for handling requests for assistance, and the role of supervisors and dispatch when other jurisdictions are involved.

■ In summary, because Corcoran is a public entity and has adopted a policy governing vehicular pursuits containing the minimum standards set forth in subdivision (c) of section 17004.7, it has immunity from liability for the personal injury and death of Alcala's decedent.

## *DISPOSITION*

The judgment is affirmed. Costs on appeal are awarded to Corcoran.

Cornell, J., and Hill, J., concurred.

Appellants' petition for review by the Supreme Court was denied April 25, 2007, S151098.