Filed 9/9/13  P. v. Loera CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID LOUIS LOERA,<br><br>    Defendant and Appellant. | B236986<br><br>(Los Angeles County<br>Super. Ct. No. BA374046) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Stephen A. Marcus, Judge.  Affirmed.

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback II and Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found David Louis Loera guilty of gross vehicular manslaughter (count 1; Pen. Code, § 192, subd. (c)(1)),[1] with a finding he fled the scene (Veh. Code, § 20001, subd. (c)), and leaving the scene of the accident with death (count 2; Veh. Code, § 20001, subd. (a)). On appeal, Loera argues: (1) his state and federal constitutional rights were violated because he was denied the opportunity to retain private counsel of his choosing; (2) there was insufficient evidence to support a jury finding of gross vehicular manslaughter; and (3) the trial court erred in denying his motion for new trial based on newly discovered evidence. We affirm the judgment.

## FACTS

### The Collision

On October 5, 2009, Alberto Perez lived at the corner of Alfred Place and Jefferson Boulevard in the city of Montebello. Upon returning home and pulling into his driveway, Perez saw Norma Lambo-Plascencia, his neighbor of five years, walking her dog and using a walker. Perez proceeded to park his car in his garage and closed the garage door. After entering his house, Perez heard a loud sound coming from Jefferson Boulevard. He went outside and saw Plascencia's dog lying motionless in the street. Mr. Perez also noticed a shoe, a bag, and a cell phone, which led him to Plascencia's body. He called 911, checked for a pulse, and was unable to find one. The coroner reported that Plascencia had many injuries, including several broken bones, multiple skin abrasions, and internal lacerations. Plascencia died at the scene from "multiple traumatic injuries" including "rapidly fatal" lacerations to the heart and aorta.

Arthur Alvarez lived at the intersection of Yorktown Avenue and Sonora Street, about 600 feet from the intersection of Alfred Place and Jefferson Boulevard. Alvarez knew Plascencia and knew that she had a small dog and used a blue/black lightweight walker. On the evening of October 5, 2009, Alvarez was in his backyard doing yard work and heard what sounded like a vehicle dragging something metal or plastic. He looked up and saw a white truck with front-end damage with the front bumper about

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

to fall off.  The truck turned from Jefferson onto Sonora.  Alvarez went outside and saw a "mangled" blue/black object in the street that looked "identical" to Plascencia's walker.

Huu Tu Chau was outside of a friend's house working on his car on the day of the collision.  Chau heard a loud screeching noise and then saw a white Silverado truck driving away from Sonora Street.  Chau described the driver to police officers as a Hispanic male around 30 or 40 years old, with dark, short hair and a mustache and goatee.

Approximately two hours after the collision, Montebello Police Officer Gus Cisneros responded to the scene with Corporal Rex Yap.  Upon arrival, Officer Cisneros observed Plascencia's body in the No. 2 eastbound lane of Jefferson Avenue.  He observed Plascencia's dog in the No. 1 lane near the "area of impact where the pedestrian and dog were struck."  Officer Cisneros also saw vehicle debris scattered in the street and a walker in multiple pieces.  Corporal Yap conducted a walk-through to determine the starting point of the collision, or the area of impact.  Corporal Yap described the intersection of Alfred Place and Jefferson Boulevard as a "T-intersection with a stop sign located on the Southeast corner of Alfred and Jefferson Boulevard."  Corporal Yap determined the area of impact by looking at gouge marks in the street.  Corporal Yap also observed a black rollator walker at the scene that was "completely destroyed."

Sergeant Christopher Cervantes of the Montebello Police Department received information identifying Loera as a possible suspect in the traffic collision.  Two days after the accident, Sergeant Cervantes spoke with Loera about the ongoing investigation.  Loera was given his *Miranda*[2] rights and the interview was videotaped and audiotaped.  Corporal Yap also met with Loera later that day.  Loera told Corporal Yap that on October 5, 2009, he spent the day with his girlfriend, Angela Terrell, and their children in Monterey Park.  Loera then left Monterey Park to go to his mother's house in Montebello.  On his way, he stopped at the stop sign at Jefferson Boulevard, made a right turn, and hit something.  He believed it was a shopping cart, but got scared and continued

---

**2**     *Miranda v. Arizona* (1966) 384 U.S. 436.

to drive.  Loera then drove to his friend Robert Ayala's house and parked the truck in his garage.  After hearing about a traffic collision in Montebello on the news, Ayala asked Loera to remove the truck from his garage.  Loera removed the vehicle, parked it at an unknown location overnight, and had the truck towed to a body shop the next day.  The front bumpers, hood, and grille were all missing.  Loera had also washed his truck off with a hose.  When Corporal Yap asked Loera why he did not notify the police after learning that a person had been killed in the collision, Loera said he did not know.

### Appellant's Vision Problems

During the interview with Corporal Yap, Loera admitted he had problems with his vision.  When asked if he was legally blind, Loera responded "yes."  He stated that his vision problems started in his youth and that he was currently under the care of a doctor.  Loera stated that when he attempts to look at something directly, it is blurry and he has to turn his head to the side in order to view the object.  In response to being asked why he drove while legally blind, Loera said, "out of sight, out of mind."  When asked what Loera meant by that phrase, he again explained that he cannot see when looking directly at something and he has to turn his head slightly to the left or right to focus on the object in front of him.  Loera also stated that he knew it was wrong to leave the scene of a traffic collision.

Kathrine Aldana, a Montebello Department of Motor Vehicles (DMV) employee, testified that all drivers must pass a vision test in order to renew their driver's licenses.  The first test is the "Snells" test, which requires reading off of a chart.  If the individual does not pass the first test, a second "Optical 1000" test is conducted by a machine.  Aldana assisted Loera on June 18, 2009 with an application to renew his driver's license.  Loera was given the "Snells" test and the "Optical 1000" test and failed both.  Standard procedure dictates that if an individual is unable to pass either vision test, he or she will not be given a temporary license until the applicant brings back a DL62 form completed by an optometrist or an ophthalmologist.  Loera was informed of this procedure after he failed the vision tests.

4

Sara Valenzuela, also a Montebello DMV employee, assisted Loera with an application in June of 2011, about a month before trial. Loera told Valenzuela he had damage to his eyes from looking at the sun directly as a child which got worse with age. Loera told Valenzuela that his vision was the reason he could not get a driver's license. Loera was with his 10-year-old son. The boy pointed to the signature line where Loera was supposed to sign the application. Loera then commented that the boy was "his eyes."

**The Criminal Case**

In December 2010, the People filed an information charging Loera with the offenses noted above. At trial, the prosecution evidence established the facts summarized above. In the defense case**,** Corporal Yap and Sergeant Cervantes both testified that during interviews after the accident, Loera said that as he was driving, a truck in the opposite lane caught his attention and distracted him. Loera then hit what he believed was a shopping cart or even a person, metal object, or a cardboard box. (4RT 1212-1213) Loera did not want to stop and look on the street to see what he hit because he was in a panic and "didn't know what the hell to do."

The jury found Loera guilty as charged. The court sentenced Loera to a total of nine years in state prison. Loera filed a timely notice of appeal.

## DISCUSSION

### I.     Motion for Continuance to Substitute Counsel

Loera contends the court erred in denying his motion for a continuance to substitute counsel.[3] We disagree.

The granting or denial of a continuance traditionally rests within the sound discretion of the trial judge. (*People v. Beeler* (1995) 9 Cal.4th 953, 1003.) Whether the

---

[3]     We note that one trial court judge may not reconsider and overrule a ruling of another judge. (*Wyoming Pacific Oil Co. v. Preston* (1958) 50 Cal.2d 736, 739; *Greene v. State Farm Fire & Casualty Co.* (1990) 224 Cal.App.3d 1583, 1588-1589; *Ziller Electronics Lab GmbH v. Superior Court* (1988) 206 Cal.App.3d 1222, 1232.) In this case, however, two trial court judges determined that the request to substitute counsel should be denied. We find the motion was properly denied regardless of which judge's reasoning and ruling we consider.

denial of a continuance is so arbitrary as to violate due process must be decided on the facts involved in each case. (*People v. Courts* (1985) 37 Cal.3d 784, 791 (*Courts*).)

When a defendant wants to hire private counsel, "trial courts are required to 'make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney.' [Citation.]" (*Courts, supra,* 37 Cal.3d at p. 790.) However, "'[t]he right of a defendant to appear and defend with counsel of his own choice is not absolute.'" (*People v. Jeffers* (1987) 188 Cal.App.3d 840, 850 (*Jeffers*).) The right to counsel of one's choosing can be limited if denying that right would result in prejudice to the defendant or if the timing of the request would affect the orderly administration of justice. (*Ibid.*; *People v. Ortiz* (1990) 51 Cal.3d 975, 983.) "Where a continuance is requested on the day of trial, the lateness of the request may be a significant factor justifying denial absent compelling circumstances to the contrary." (*Jeffers, supra,* 188 Cal.App.3d. at p. 850.)

On August 1, 2011, the day set for trial, Bradley Brunon sought to substitute in as counsel for appellant. The court responded: "The only way I'm going to allow that substitution is if you're ready to go today." [4] Brunon said he would need a 10-day continuance to prepare for trial. The court denied the motion and the case was sent to another judge for trial that same day.

When Loera arrived at the trial court, he renewed his motion for a continuance to substitute counsel. The trial court indicated he could not overrule the prior judge's order, but allowed Brunon to explain his request. Brunon recounted the history of the case. He told the trial court that six weeks prior to August 1, 2011, Loera contacted him stating he was not communicating with his assigned Deputy Public Defender, Gail Bristo. Brunon said he wanted to "try to calm the waters," so he attempted to contact the Bristo "a number of times." Initially, Brunon did not receive a response. Eventually, however,

---

[4]     Thereafter, the court conducted a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). On appeal, both parties acknowledge that a *Marsden* hearing was not necessary in this case since Loera sought to replace his appointed counsel with *retained* counsel and not with different appointed counsel. (See *Courts, supra,* 37 Cal.3d at p. 795, fn. 9.)

6

Bristo returned the calls and talked with Brunon about a pending accident reconstruction report. At the time, Brunon did not feel he could add anything to the case and asked Bristo to contact him when the report came in to see if things changed.

Loera later informed Brunon that the case had been assigned to a court for trial. Loera told Brunon that he had not been told about the accident reconstruction report. Brunon attempted to contact Bristo about the results to determine whether he could assist Loera. However, the attorneys did not speak until the morning of August 1, 2011, when Brunon sought to substitute in as counsel for appellant. Brunon informed the trial court he just received the accident reconstruction report that morning and he could be ready for trial in 10 days. The prosecutor explained that if a 10-day continuance were granted, the case would need to be further delayed until the first week of September due to witness unavailability.

The trial court then told Brunon: "If you're willing to start the trial today, I think [Loera] has a right to have you as the attorney of record." The trial court analyzed the four factors in *People v. Windham* (1977) 19 Cal.3d 121, including the age of the case, and that Brunon had many other opportunities to substitute in before the day the case was set for trial. The court then denied the motion for continuance to substitute counsel.

We find no abuse of discretion by the trial court. Loera was adequately represented by Bristo. Appellant's case was set for trial on four occasions before August 1, 2011: May 17, June 13, July 19, and July 27. At no time did Loera advise the court of his intent to retain private counsel even though he had been in contact with Brunon six weeks prior to August 1, 2011. Granting the continuance would have pushed the trial back further due to witness unavailability. This would have resulted in further delay of a case that had already been in the system for almost a year. Brunon had adequate opportunity to substitute in as counsel for Loera prior to the day set for trial. Considering these factors, we conclude that the trial court did not arbitrarily deny appellant's motion for continuance to substitute counsel.

## II.    Sufficiency of Evidence

Loera contends there was insufficient evidence to support his conviction of vehicular manslaughter with gross negligence under section 192, subdivision (c)(1). We disagree.

Our role in determining the sufficiency of evidence is limited.  We review " 'the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.'  [Citations.]" (*People v. Tafoya* (2007) 42 Cal.4th 147, 170.)  It is not the task of this court to reweigh the evidence.  (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)  That the facts and circumstances could also reasonably support a finding of innocence is not determinative. (*People v. Millwee* (1998) 18 Cal.4th 96, 132.)

Section 192, subdivision (c)(1), defines gross vehicular manslaughter as "driving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence."  Gross negligence is "the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences."  (*People v. Bennett* (1991) 54 Cal.3d 1032, 1036.)  The state of mind of a person who exercises conscious indifference is "'I don't care what happens.'" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1204.)  The test for gross negligence is an objective one.  It looks at whether a reasonable person in the defendant's position would have been aware of the risks involved.  (*Ibid.*)

Loera claims there is insufficient evidence of his conscious indifference.  He is wrong.  The evidence here shows that a reasonable person in appellant's position would have been aware of the risk of causing death from driving.  Loera knew his vision was damaged as a child and that it was worsening with age.  Loera admitted he was "legally blind."  Loera knew he was driving without a valid driver's license and, worse yet, that he was unable to get a driver's license because he could not pass the vision tests.  In spite of his condition and the inability to get a valid driver's license, Loera nonetheless chose

8

to drive and struck Plascencia during daylight hours while she was walking lawfully in an unmarked crosswalk. The investigating officers did not see any skid marks on the street to suggest Loera slammed on the brakes to avoid hitting Plascencia. Loera fled the scene even though he knew he hit something, and admitted it may have been a person. Thereafter, Loera hid his truck, washed it and had it towed to a body shop.

This evidence shows a conscious indifference to human life and the "I don't care" attitude which could reasonably lead a jury to conclude that Loera was acting with gross negligence at the time of the accident. The evidence presented at trial was sufficient.

### III.    Motion for New Trial

Loera contends that the trial court erred in denying his motion for new trial based on newly discovered evidence pursuant to section 1181, subdivision 8. We disagree.

A motion for new trial based on newly discovered evidence is looked upon with disfavor because there must be an end to litigation. (*People v. Williams* (1962) 57 Cal.2d 263, 270.) "'"'The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears.'" [Citations.]'" (*People v. Howard* (2010) 51 Cal.4th 15, 42-43.) A trial court abuses its discretion when its ruling is arbitrary or capricious. (*People v. Branch* (2001) 91 Cal.App.4th 274, 282.)

"In ruling on a motion for new trial based on newly discovered evidence, the trial court considers the following factors: "'"'1. That the evidence, and not merely its materiality, be newly discovered; 2. That the evidence be not cumulative merely; 3. That it be such as to render a different result probable on a retrial of the cause; 4. That the party could not with reasonable diligence have discovered and produced it at the trial; and 5. That these facts be shown by the best evidence of which the case admits.'" [Citations.]" (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

Under section 1181, subdivision 8, a motion for new trial may be granted when "new evidence is discovered material to the defendant, and which he [or she] could not, with reasonable diligence, have discovered and produced at the trial." On the other hand, "[f]acts that are within the knowledge of the defendant at the time of trial are not newly

9

discovered even though he did not make them known to his counsel until later [citation]; and it must appear that evidence, rather than merely its materiality, be newly discovered in order to support a motion for a new trial on that ground." (*People v. Greenwood*, (1957) 47 Cal.2d 819, 822.)

Loera's "newly discovered" evidence consisted of an uncertified copy of a temporary driver's license, declarations written by his friends and family, and the opinion of an accident reconstruction expert. Because the evidence does not qualify as newly discovered under the law, or render a different result probable, the motion was properly denied.

Loera did not provide new evidence that he had a valid driver's license, temporary or permanent. The copy of the temporary license he submitted with the motion for new trial indicates it was issued to Loera on June 18, 2009 and expired on August 16, 2009. Certainly, Loera knew about this temporary license prior to trial on August 1, 2011, so the evidence was not newly discovered. We also find this evidence would not have assisted Loera's defense. First, the temporary license was not admissible at trial. It was not certified and thus not authenticated. (Evid. Code, § 1401.) Second, it expired almost two months before the collision on October 5, 2009. As a result, it could not have been used to demonstrate Loera's vision was clear enough to allow him to drive on the date of the accident. Further it did not contradict Loera's admissions that he was legally blind and had to turn his head to the side and use his peripheral vision to see something in front of him.

Loera also presented declarations of a number of friends and family who indicated he was a good driver. Again, this evidence was not newly discovered. Loera had regular contact with the declarants and could have asked them to testify to the contents of their declarations well before trial. In addition, we agree with the trial court that some of the declarations may not have been relevant and admissible at trial. The issue before the jury was whether Loera drove with the knowledge he had impaired vision and drove with conscious disregard for the consequences to human life on October 5, 2009. The evidence of appellant's driving abilities before the accident, whether he could play sports,

10

and whether he was a nice person is not relevant to the events of October 5, 2009 and would not have affected the jury's conclusion that Loera was grossly negligent.

Finally, the report from the accident reconstruction expert was not newly discovered. The expert was retained and completed his report prior to trial. Loera knew about the pending report before trial began. The report was completed, but never used as evidence in the trial. The report is not newly discovered and cannot be the basis for a new trial. Further, the report concluded only that the accident was caused by failing to yield to a pedestrian. It did not consider whether the accident was caused by Loera's impaired vision and thus would not have changed the outcome of trial.

We find no abuse of discretion because defendant failed to show that the evidence was newly discovered or that it would have changed the result of his conviction.[5]

## DISPOSITION

The judgment is affirmed.

BIGELOW, P. J.

We concur:

RUBIN, J.

GRIMES, J.

---

[5] At oral argument, appellant's counsel indicated she was precluded from filing a habeas petition based on the new evidence because the trial court denied the motion for new trial. Appellant's counsel cited to no authority for this proposition and we are unaware of any such rule.