Filed 8/13/18

# IN THE SUPREME COURT OF CALIFORNIA

IRMA RAMIREZ, Individually and as Personal Representative, etc.,

        Plaintiff and Appellant,

        v.

CITY OF GARDENA,

        Defendant and Respondent.

S244549

Ct.App. 2/1 B279873

Los Angeles County
Super. Ct. No. BC609508

Vehicle Code section 17004.7 (section 17004.7) provides public agencies employing peace officers immunity from damages for collisions resulting from police chases if, but only if, the agency "adopts and promulgates a written policy on, and provides regular and periodic training on an annual basis for, vehicular pursuits . . . ." (§ 17004.7, subd. (b)(1).) Promulgation of the written policy must include "a requirement that all peace officers of the public agency certify in writing that they have received, read, and understand the policy." (*Id*., subd. (b)(2).)

We must decide whether a public agency may receive section 17004.7's immunity only if every peace officer it employs has, in fact, provided the written certification. We conclude that the agency's policy must require the written certification, but 100 percent compliance with that requirement is not a prerequisite to receiving the immunity.

1

We affirm the judgment of the Court of Appeal, which reached a similar conclusion. (*Ramirez v. City of Gardena* (2017) 14 Cal.App.5th 811 (*Ramirez*).) We disapprove *Morgan v. Beaumont Police Dept.* (2016) 246 Cal.App.4th 144 (*Morgan*) to the extent it is inconsistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

"Because neither party petitioned the Court of Appeal for a rehearing, we take the facts largely from that court's opinion." (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 415; see Cal. Rules of Court, rule 8.500(c)(2).)

"Mark Gamar was a passenger in a pickup truck that was the subject of a pursuit by police officers employed by the City of Gardena (the City) on February 15, 2015. Gamar died from injuries he sustained when the truck spun into a streetlight pole after one of the officers [Officer Michael Nguyen] bumped the left rear of the truck with the right front of his vehicle to stop the truck using a maneuver called a 'Pursuit Intervention Technique' . . . ." (*Ramirez, supra*, 14 Cal.App.5th at p. 814.)

"At the time of the incident, the City had a written policy on vehicle pursuits that was contained in a portion of the police manual." (*Ramirez, supra*, 14 Cal.App.5th at p. 815.) "The City provided training to its police officers on its pursuit policy on at least an annual basis. As part of that training, officers were required to certify electronically that they had received, read, and understood the pursuit policy. [¶] A training log produced by the City confirmed that 81 of the City's 92 officers (including Officer Nguyen) had completed the annual training on the City's pursuit policy within a year of the incident. The City also produced written certifications completed by 64 officers in 2009 and 2010 attesting that they had received, read, and understood the City's pursuit policy. According to testimony submitted by the City's custodian of records, Lieutenant Mike

Saffell . . . , all City officers employed at the time of the incident completed such forms, but some forms might have been lost during the police department's move to a new station." (*Id.* at pp. 815-816, fn. omitted.)

Plaintiff Irma Ramirez, Gamar's mother, filed a wrongful death suit against the City, claiming that Officer Nguyen acted negligently and committed battery. The City moved for summary judgment, in part on the ground that it was immune under section 17004.7. The trial court granted the motion on this ground. It "concluded that the 'City properly promulgated its pursuit policy in compliance with Vehicle Code [section] 17004.7[, subd.](b) and provided regular and periodic training.' Based on the Saffell declaration, the court found that '[a]ll active duty police officers received the training on an annual basis or more frequently and were required to certify that he or she read, received, and understood the pursuit policy and training.' " (*Ramirez*, *supra*, 14 Cal.App.5th at p. 816.) The court also found that the policy met section 17004.7's other requirements. (*Ibid.*)

Plaintiff appealed. As relevant here, and relying on *Morgan*, *supra*, 246 Cal.App.4th 144, she argued "that the City is not entitled to immunity because it failed to provide evidence that *all* of its officers executed written certifications in compliance with section 17004.7, subdivision (b)(2)." (*Ramirez*, *supra*, 14 Cal.App.5th at p. 820.) The Court of Appeal disagreed, holding that it suffices if a public agency imposes the certification requirement; the agency does not have to prove total compliance with the requirement. Because the City's pursuit policy imposed such a requirement, and after rejecting plaintiff's remaining arguments, the Court of Appeal affirmed the grant of summary judgment in the City's favor.

We granted plaintiff's petition for review limited to the following issue: Is the immunity provided by Vehicle Code section 17004.7 available to a public agency only if all peace officers of the agency certify in writing that they have received, read, and understand the agency's vehicle pursuit policy?

3

## II. Discussion

"Except as otherwise provided by statute," a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) Vehicle Code section 17001 creates a statutory exception to public entities' general tort immunity: "A public entity is liable for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment." "Section 17004.7 in turn limits the liability that [Vehicle Code] section 17001 otherwise permits by affording immunity to public agencies that adopt and implement appropriate vehicle pursuit policies." (*Ramirez*, *supra*, 14 Cal.App.5th at p. 818.)

Subdivision (b) of section 17004.7 provides: "(1) A public agency employing peace officers that adopts and promulgates a written policy on, and provides regular and periodic training on an annual basis for, vehicular pursuits complying with subdivisions (c) and (d)[1] is immune from liability for civil damages for personal injury to or death of any person or damage to property resulting from the collision of a vehicle being operated by an actual or suspected

---

[1] Subdivision (c) of section 17004.7 contains detailed requirements that the policy must meet. Subdivision (d) of section 17004.7 defines " '[r]egular and periodic training' " as meaning "annual training that shall include, at a minimum, coverage of each of the subjects and elements set forth in subdivision (c) and that shall comply, at a minimum, with the training guidelines established pursuant to Section 13519.8 of the Penal Code."

Penal Code section 13519.8 provides that the "commission" shall implement training courses for handling high-speed vehicle pursuits. The "commission" referred to is the "Commission on Peace Officer Standards and Training" (POST commission). (Pen. Code, § 13500, subd. (a).)

4

violator of the law who is being, has been, or believes he or she is being or has been, pursued in a motor vehicle by a peace officer employed by the public entity.

"(2) Promulgation of the written policy under paragraph (1) shall include, but is not limited to, *a requirement that all peace officers of the public agency certify in writing that they have received, read, and understand the policy*. The failure of an individual officer to sign a certification shall not be used to impose liability on an individual officer or a public entity." (Italics added.)

Section 17004.7 was amended in 2005 (effective July 1, 2007) to read as it does today in apparent reaction to the decision in *Nguyen v. City of Westminster* (2002) 103 Cal.App.4th 1161. (See generally *Morgan*, *supra*, 246 Cal.App.4th at pp. 156-157.) In *Nguyen*, the court "reluctantly" found the defendant city immune under the former version of section 17004.7. (*Nguyen*, at p. 1163.) The *Nguyen* court criticized former section 17004.7, and urged the Legislature to reconsider it, because it "simply grants a 'get out of liability free card' to public entities that go through the formality of adopting such a policy. There is no requirement the public entity implement the policy through training or other means. Simply adopting the policy is sufficient under the current state of the law." (*Nguyen*, at p. 1168.) The current section 17004.7 does contain requirements that the public entity implement the policy through training and other means to ensure it is not a mere formality.

The sole issue before us on review focuses on the language in section 17004.7 italicized in our quotation above: Promulgation of the policy must include "a requirement that all peace officers of the public agency certify in writing that they have received, read, and understand the policy." Does this mean it suffices if the policy contains the requirement? Or must the public entity prove not only that it has imposed the requirement, but also that all of the entity's peace officers complied with it?

5

The court in *Morgan*, *supra*, 246 Cal.App.4th 144, gave the statute the latter interpretation. It "conclude[d] that the promulgation language of section 17004.7, subdivision (b)(2) is unambiguous in its requirement that '*all* peace officers of the public agency certify in *writing* that they have received, read, and understand' the agency's vehicle pursuit policy. (Italics added.)" (*Id*. at p. 154.) Plaintiff urges this interpretation.

The Court of Appeal here disagreed with *Morgan*, *supra*, 246 Cal.App.4th 144. It "agree[d] with the City that '[p]romulgation' in section 17004.7, subdivision (b)(2) means that, to obtain immunity, a public agency must *require* its peace officers to certify in writing 'that they have received, read, and understand' the agency's pursuit policy. However, if the agency actually imposes such a requirement, complete compliance with the requirement is not a prerequisite for immunity to apply." (*Ramirez*, *supra*, 14 Cal.App.5th at p. 825.)

We agree with the Court of Appeal in this case. "Because the statutory language is generally the most reliable indicator of legislative intent, we first examine the words themselves, giving them their usual and ordinary meaning and construing them in context." (*Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 268.) Here, the statutory language resolves the issue. Section 17004.7, subdivision (b)(2), does not say that, for the public agency to obtain immunity, all of its peace officers must have made the certification. It says instead that "[p]romulgation" of the policy must include "a requirement that all peace officers of the public agency certify in writing that they have received, read, and understand the policy." The plain meaning of this language is that the policy must contain the requirement, not that every peace officer must meet the requirement.

If the Legislature had intended plaintiff's interpretation, it would have said so directly, as it easily could have done. As the Court of Appeal in this case noted, had it intended plaintiff's interpretation, the Legislature "could simply have said

that promulgation 'means' written certification by all officers.  (§ 17004.7, subd. (b)(2).)  The Legislature used precisely that construction in section 17004.7, subdivision (d) in defining the training requirement, where it stated that ' "[r]egular and periodic training" under this section *means* annual training' that includes specified elements.  (Italics added.)"  (*Ramirez*, *supra*, 14 Cal.App.5th at pp. 822-823.)

Even if the plain language were not so clear, the statute's purpose and public policy, which we may consider when a statute's language permits more than one reasonable interpretation (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737), lead to the same conclusion. Plaintiff's interpretation would impose a heavy burden on public agencies, especially large ones.  "[R]equiring 100 percent compliance as a condition of immunity could potentially result in the absurd circumstance that the failure of a single officer to complete a written certification in an agency employing thousands could undermine the agency's ability to claim immunity, even though the agency conscientiously implemented its pursuit policy."  (*Ramirez*, *supra*, 14 Cal.App.5th at p. 823.)  "Under that interpretation, an agency could do all within its power to implement its pursuit policy but still be liable if a single negligent or recalcitrant officer happens to be out of compliance with the agency's certification requirement at the time an incident occurs."  (*Id*. at p. 824.)

When it amended section 17004.7 in 2005, the Legislature sought to improve public safety by encouraging public entities to promulgate a pursuit policy and provide training pursuant to that policy, which, in turn, was designed to reduce the number of pursuits and the number and severity of collisions resulting from pursuits.  (*Morgan*, *supra*, 246 Cal.App.4th at p. 157 [quoting a Senate Committee on Public Safety analysis to that effect].)  But the Legislature made "adoption of a vehicle pursuit policy . . . discretionary," not mandatory.

7

(§ 17004.7, subd. (a).)  Achieving immunity was the incentive for public entities to adopt the policy and provide the training.  Plaintiff's interpretation would make it very difficult for a public entity like the City to achieve immunity, and almost impossible for a large entity employing thousands of peace officers.  Thus, that interpretation would greatly reduce the incentive for public entities, especially large ones, to promulgate the policy and provide the training, something we doubt the Legislature intended.

The Court of Appeal here found support for its interpretation in the second sentence of section 17004.7, subdivision (b)(2), which states:  "The failure of an individual officer to sign a certification shall not be used to impose liability on an individual officer or a public entity."  (See *Ramirez*, *supra*, 14 Cal.App.5th at p. 822.)  But, as the *Morgan* court explained, it is possible that this language merely makes clear that the failure to sign the certification is not itself a reason to impose liability.  (See *Morgan*, *supra*, 146 Cal.App.4th at p. 160.)  Accordingly, we do not rely on that subdivision in reaching our conclusion.

Plaintiff argues that to obtain immunity under section 17004.7, an agency must, as she quotes the statute, " 'adopt *and promulgate* a written policy' based upon '*guidelines established pursuant to Penal Code section 13519.8.*'  (See Veh. Code, § 17004.7[, subds.] (b)(1) and (d) . . . .)"  She argues that the policy violated POST commission guidelines that contain the certification requirement.  We need not consider the meaning of Penal Code section 13519.8, for plaintiff conflates two separate requirements.  Section 17004.7, subdivision (d)'s reference to guidelines under Penal Code section 13519.8 concerns *training*, not the certification requirement.  (See fn. 1, *ante*.)  The training requirement is not at issue here.

Similarly, the *Morgan* court cited POST commission guidelines as supporting its interpretation.  (*Morgan*, *supra*, 146 Cal.App.4th at pp. 153-154,

159.)  But as the Court of Appeal noted in this case, "the issue here is not whether a written certification requirement exists, but rather what the consequences are if an officer fails to meet that requirement.  The City does not dispute that public agencies must implement a written certification requirement; it simply claims that section 17004.7 does not *itself* require written certification by all officers as a condition of immunity.  Moreover, section 17004.7 refers to the POST commission guidelines only with respect to the training requirements specified in subdivision (d), not with respect to the promulgation provision contained in subdivision (b).)"  (*Ramirez*, *supra*, 14 Cal.App.5th at pp. 823-824, fn. 7.)

For these reasons, we agree with the Court of Appeal that a public agency's pursuit policy must contain the written certification requirement, but the agency does not have to prove total compliance with that requirement as a condition of obtaining immunity under section 17004.7.  A requirement may exist even if not every peace officer complies with it.  Beyond that, we need not decide when a lack of compliance with the certification requirement or meaningful implementation of the pursuit policy indicates that an agency is not satisfying the statute's requirements.  Those questions fall outside the scope of the issue presented for our review.  (See *ante*, p. 3 [stating issue].)

### III. CONCLUSION

We affirm the judgment of the Court of Appeal.  We also disapprove

*Morgan v. Beaumont Police Dept.*, *supra*, 246 Cal.App.4th 144, to the extent it is

inconsistent with this opinion.

**CHIN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**LAVIN, J.***

_____

\*      Associate Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Ramirez v. City of Gardena

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 14 Cal.App.5th 811
**Rehearing Granted**

_____

**Opinion No.** S244549
**Date Filed:** August 13, 2018

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Yvette M. Palazuelos

_____

**Counsel:**

Innabi Law Group, Abdalla J. Innabi and Amer Innabi for Plaintiff and Appellant.

Manning & Kass, Ellrod, Ramirez, Trester, Mildred K. O'Linn, Tony M. Sain, Ladell Hulet Muhlestein and Mark Wilson for Defendant and Respondent.

Dennis J. Herrera, City Attorney (San Francisco), Yvonne R. Meré, Chief of Complex and Affirmative Litigation, Christine Van Aken, Chief of Appellate Litigation, and Natalie M. Orr, Deputy City Attorney, for League of California Cities as Amicus Curiae on behalf of Defendant and Respondent.

Jones & Mayer, James R. Touchstone and Denise Rocawich for California Police Chiefs Association, California State Sheriffs' Association and California Peace Officers' Association as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Abdalla J. Innabi
Innabi Law Group
2500 East Colorado Boulevard, Suite 230
Pasadena, CA  91107
(626) 395-9555

Ladell Hulet Muhlestein
Manning & Kass, Ellrod, Ramirez, Trester
801 South Figueroa Street, 15th Floor
Los Angeles, CA  90017-3012
(213) 624-6900